UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILMARIO DEVONDRIC TRUEBLOOD,
     Petitioner,

v.                            Case No. 4:21cv19/MW/EMT

MARK S. INCH, SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Wilmario Devondric Trueblood (Trueblood) filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2254 with an incorporated appendix and memorandum of law (ECF No. 1).  Respondent (the State) filed an answer (ECF No. 13) and relevant portions of the state court record (ECF Nos. 13-1 through 13-29).  Trueblood filed a reply (ECF No. 18).

The case was referred to the undersigned for issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B)–(C) and Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition

of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is also the opinion

of the undersigned that Trueblood is not entitled to federal habeas relief.

## I.      RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established

by the state court record (*see* ECF No. 13).[1]  Trueblood challenges his convictions

and sentences entered in the Circuit Court for Leon County, Florida, in 2014.  He

was charged in case number 2013CF915 with Count 1, burglary of a dwelling, and

Count 2, grand theft, at the Bilal residence (ECF No. 13-1 at 16).  Trueblood

proceeded to a jury trial on these charges on March 11, 2014, and the jury found him

guilty as charged on Count 1 and not guilty on Count 2 (ECF No. 13-1 at 191–92).

Trueblood was charged in case number 2013CF916 with Count 1, burglary of

a dwelling, and Count 2, grand theft at the Verfaillie/Pereira residence (ECF No. 13-

3 at 23).  After a jury trial on May 13, 2014, the jury found him guilty as charged on

both counts (ECF No. 13-3 at 194–95).  Trueblood was sentenced in both cases on

June 3, 2014 (ECF No. 13-2 at 68–77).  In case number 2013CF915, he received a

sentence of 446.4 months (ECF No. 13-1 at 202–08).  In case number 2013CF916,

---

[1] Citations to the state court record and the parties' pleadings refer to the document numbers and the page numbers assigned by the court's electronic filing system.

he received a sentence of 457.8 months, both counts to run concurrently (ECF No. 13-3 at 201–07).

Trueblood appealed his judgments and sentences to the First District Court of Appeal (First DCA) in two separate appeals.   Before the appeals proceeded, however, he filed a motion under Florida Rule of Criminal Procedure 3.800(b) to correct sentencing error in case number 2013CF915 (ECF No. 13-7 at 4).   The motion was heard by the circuit court, which struck a fine and surcharge and a corrected a scrivener's error on the scoresheet (ECF No. 13-7 at 24–25).   Trueblood was resentenced with a corrected scoresheet to 446.4 months (ECF No. 13-7 at 29).

Trueblood's two separate appeals were consolidated in the First DCA, and he filed a counseled amended brief arguing trial court error (1) in failing to hold a hearing and determine his competency to proceed after ordering a competency evaluation; and (2) in admitting evidence of his multiple burglaries in both trials (ECF No. 13-9 at 2–64).   The state filed an answer brief (ECF No. 13-10) and Trueblood filed a reply (ECF No. 13-11 at 2).

The First DCA issued a written opinion on June 15, 2016, affirming in part and reversing in part with instructions (ECF No. 13-12 at 4–8).  The court reversed on the issue of failure to hold a competency hearing, and remanded for a nunc pro tunc competency hearing based on the competency evaluation Trueblood was

provided prior to trial (ECF No. 13-12 at 4–8).  *See Trueblood v. State*, 193 So. 3d 1060 (Fla. 1st DCA 2016) (Table).  The mandate issued on July 1, 2016 (ECF No. 13-12 at 3).

On remand, the circuit court conducted a nunc pro tunc evidentiary hearing on March 7, 2017, as to Trueblood's competence to stand trial in the two cases (ECF No. 13-13 at 122–43).  After hearing testimony from Dr. Michael D'Errico, the doctor who examined Trueblood in April 2013, and after considering other record evidence, the state court subsequently issued an order on October 5, 2017, finding Trueblood was competent to proceed as of the date of the doctor's report and thereafter to the time of his trials (ECF No. 13-13 at 96–98).  The state circuit court concluded that "having determined that Defendant was indeed competent to proceed as of the date of Dr. D'Errico's report and at every time after that up until the time of his trial, this Court's work is done.  There is no basis for overturning his convictions in these cases, at least not for any reason relating to Defendant's competency." (ECF No. 13-13 at 98).

Trueblood appealed his judgments and sentences again to the First DCA in two separate appeals, which were consolidated for briefing and consideration. Trueblood filed a counseled consolidated initial brief arguing that the circuit court abused its discretion on remand by finding he was competent at the time of his trials

(ECF No. 13-15 at 2).  The State filed an answer brief (ECF No. 13-16 at 2) and Trueblood filed a reply brief (ECF No. 13-17 at 2).  On June 20, 2019, the First DCA issued a per curiam affirmance (ECF No. 13-18 at 3).  *See Trueblood v. State*, 273 So. 3d 949 (Fla. 1st DCA 2019) (Table).  The mandate issued on July 11, 2019 (ECF No. 13-18 at 2).

On September 25, 2019, Trueblood filed a pro se petition for writ of habeas corpus in the First DCA alleging ineffective assistance of appellate counsel in both cases (ECF No. 13-20 at 2).  He alleged that appellate counsel rendered ineffective assistance in regard to denial of his motion to suppress.  The State filed a response with an appendix (ECF No. 13-21 at 2), and Trueblood filed a reply with an appendix (ECF No. 13-22 at 2).  The First DCA denied the petition on the merits on June 12, 2020 (ECF No. 13-23 at 2) and denied the motion for rehearing on August 3, 2020 (ECF No. 13-24 at 6).  *See Trueblood v. State*, 299 So. 3d 1168 (Fla. 1st DCA 2020).

During the pendency of his petition in the First DCA, Trueblood filed a petition for writ of habeas corpus in the Florida Supreme Court on January 15, 2020 (mailbox rule) alleging manifest injustice because the trial judge who presided over his trials was subsequently removed from office (ECF No. 13-25 at 4).  He also alleged manifest injustice in the trial court's denial of a second competency evaluation (*id.* at 14).  The Florida Supreme Court treated the petition as a motion

for postconviction relief under Florida Rule of Criminal Procedure 3.850 and transferred it to the state circuit court to be treated as if it had originally been filed in the circuit court on January 15, 2020 (ECF No. 13-26 at 2).  In that order, the court stated that the transfer should not be considered as an adjudication of the merits, a determination that the circuit court had jurisdiction, that the petition should be considered as a motion for postconviction relief, or that it should be ruled upon on the merits (*id.*).  The postconviction court denied the motion as untimely under Rule 3.850(b) (ECF No. 13-25 at 91).  The court also concluded that even if not untimely, the claims were meritless and should be summarily denied because the claim about the trial judge was entirely speculative and the competency issue was previously raised and addressed on remand from the First DCA (*id.*).

Trueblood, pro se, appealed the denial of postconviction relief (ECF No. 13-27 at 2), and the State elected not to file an answer brief pursuant to Florida Rule of Appellate Procedure 9.141(b)(2)(c) (ECF No. 13-28 at 2).  The First DCA affirmed per curiam on October 15, 2020 (ECF No. 13-29 at 3), and the mandate issued on November 12, 2020 (*id.* at 2).  *See Trueblood v. State*, 304 So. 3d 292 (Fla. 1st DCA 2020) (Table).

Trueblood filed the instant petition under 28 U.S.C. § 2254 on January 11, 2021 (ECF No. 1).

## II.   STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[2]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412–13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its

---

[2] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in part II was joined by Justices Souter, Ginsburg, and Breyer.

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003).  After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court.  *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding").  "The question under AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' " *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet . . . because it was meant to be." *Richter*, 562 U.S. at 102.  The Court elaborated:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

To be entitled to habeas relief, the petitioner must show that he is in custody "in violation of the Constitution or laws or treaties of the United States," *see* 28 U.S.C. § 2254(a), and that the constitutional error resulted in "actual prejudice," meaning, the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted).

## III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner exhaust available state court remedies, *see* 28 U.S.C.

§ 2254(b)(1), thereby giving the State the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). The petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365–66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999); *Picard*, 404 U.S. at 277–78.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted—that is, procedurally barred from federal review. *See Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999). The court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734–35 & n.1 (1991); *see also Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470, 1478 (11th Cir. 1990), *rev'd on other*

*grounds*, 498 U.S. 308 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  *Bailey*, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  *Id.*

A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 263 (1989).  The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (citing *Card v. Dugger*, 911 F.2d 1494, 1516–17 (11th Cir. 1990)).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.  *Id.* Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  *Id.*  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee*

*v. Kemna*, 534 U.S. 362, 375 (2002).  The federal court "lacks jurisdiction to entertain a federal claim on review of a state court judgment, if that judgment rests on a state law ground that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Foster v. Chatman*, 136 S. Ct. 1737, 1745 (2016) (internal quotation marks and citation omitted).

To overcome a procedural default, the petitioner must show cause for the default and prejudice resulting therefrom, or that the federal court's failure to reach the merits of the claim would result in a fundamental miscarriage of justice. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d at 1477.  "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (internal quotations and citation omitted).  To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him, which is a stronger showing that is needed to establish prejudice. *Id*.

Case No.: 4:21cv19/MW/EMT

## IV.   TRUEBLOOD'S CLAIMS

**A.   Ground One: First, the trial court committed fundamental error resulting in manifest injustice by denying Petitioner a second competency evaluation and without appointing a second expert as required by Florida law; and Second, the nunc pro tunc determination of competency was based on remote and insufficient evidence, violating Trueblood's right of Due Process.**

In part one of his claim, Trueblood argues that he should have been provided a second competency evaluation before trial (ECF No. 1 at 92).   In part two of his claim, he argues that the nunc pro tunc competency hearing held after trial pursuant to remand by the First DCA violated his federal constitutional right to due process because the competency report was prepared one year before trial (ECF No. 1 at 99, 103).

### 1.   Exhaustion

As noted above, there are two parts to Ground One.   Exhaustion as to each is addressed separately.

### a.   Second Competency Evaluation

The State contends that Trueblood's claim alleging error with respect to the denial of a *second* competency evaluation was unexhausted in state court and therefore procedurally defaulted because the federal nature of the claim was not fairly presented on direct appeal (ECF No. 13 at 16–17).   This contention is correct.

On direct appeal from his criminal trials, Trueblood argued trial court error in denial of a competency hearing after his *initial* competency evaluation and report, citing numerous state law requirements for such a hearing  (ECF No. 13-9 at 47–50). He made a fleeting reference to new counsel's request for a second competency evaluation, noting that counsel had concerns regarding his competency, "even going so far as requesting a second evaluation," but he did not urge denial of a second evaluation as grounds for reversal  (*id.* at 49–50).  The State, in its answer brief, ignored the issue of whether a hearing was required to be held on the first competency report and, instead, addressed the issue of whether the trial court should have granted a second competency evaluation after new counsel asked for a second evaluation (ECF No. 13-10 at 32).

The First DCA reversed in part and remanded for a nunc pro tunc competency hearing because one was required after the first evaluation and report under Florida procedural rules and precedent (ECF No. 13–12).  *See Trueblood v. State*, 193 So. 3d 1060, 1062 (Fla. 1st DCA 2016).  The court agreed that Trueblood was due a competency hearing after the first competency report, *id.* at 1061, and explained:

> A competency hearing was the appropriate next step after the evaluation was conducted.  As this Court explained in *Brooks v. State,* 180 So. 3d 1094, 1095–96 (Fla. 1st DCA 2015),

> If the trial court fails to hold a competency hearing or enter a written order of competency, reversal is required; however, a new trial is required only if the trial court is unable to conduct a *nunc pro tunc* evaluation of the defendant's competency at the time of the original trial. A *nunc pro tunc* competency evaluation can be done where there are a sufficient number of expert and lay witnesses who have examined or observed the defendant contemporaneous with trial available to offer pertinent evidence at a retrospective hearing.

*Trueblood,* 193 So. 3d at 1062. The First DCA also noted that, prior to trial, counsel

filed a motion requesting a second evaluation:

> Defense counsel then filed a second motion to determine competency, stating:

> > Although Dr. D'Errico found the Defendant competent to proceed, the undersigned is having a hard time believing that the defendant is competent to proceed based on conversations with the undersigned and would request a second opinion.

> A hearing on the second motion was held, during which defense counsel explained that even though Dr. D'Errico found Trueblood competent, counsel doubted the finding given the nature of the case since Trueblood rejected a thirty-five year plea offer, despite scoring a minimum of sixty-nine years and a maximum of 735.[3] So the trial court conducted a plea colloquy of sorts, but did not conduct a competency hearing. The trial court ultimately denied the motion for a second competency evaluation. Defense counsel filed a motion seeking to renew the request for competency evaluation without further

---

[3] At the time the plea offer was made, Trueblood was facing revocation of his probation imposed for multiple 2010 criminal convictions, as well as trial on two of the 59 new cases filed in 2013 (*see* ECF No. 13-1 at 73; ECF No. 13-14 at 58).

> arguments and in order to preserve the issue for appeal, which was
> denied.

*Id.* at 1061 (footnote added).  On the issue of the second motion, the First DCA stated: "For clarity, the hearing on the second motion for competency evaluation was to determine whether or not there were reasonable grounds to believe that Trueblood may be incompetent in order to justify an examination—now a second examination. The court did not find such grounds." *Id.* at 1062.  The First DCA did not determine whether the lower court's denial of a second examination was correct—thus not expressly ruling on the merits of that issue.

On remand, the state circuit court conducted a nunc pro tunc competency hearing based on Dr. D'Errico's evaluation and consideration of other documents in the record.  The state court found that Trueblood was competent prior to and during his trials.  On appeal to the First DCA from that retrospective determination, Trueblood argued that the trial court abused its discretion by finding Trueblood was competent to be tried based on a report by a single expert that predated his trials (ECF No. 13-15 at 14–18).  He contended that evidence and testimony concerning his status a year before trial was not relevant to his condition during trial and cited his attorney's request for a second competency evaluation in 2014 (*id.* at 18).  The First DCA affirmed per curiam the state court's retrospective finding of competency

(ECF No. 13-18 at 3).  *See Trueblood v. State*, 273 So. 3d 949 (Fla. 1st DCA 2019) (Table).

Trueblood's federal claim challenging the state court's denial of a second competency evaluation by a second expert prior to his trials was not fairly presented as a federal claim in the direct appeal from his convictions and sentence.  A petitioner does not satisfy the exhaustion requirement "merely by presenting the state court with 'all the facts necessary to support the claim,' or by making a 'somewhat similar state-law claim.' "  *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012) (quoting *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d at 1343–44).  Similarly, "a petitioner cannot 'scatter some makeshift needles in the haystack of the state court record.  The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined.  Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.' "  *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1271 (11th Cir. 2015) (quoting *Kelley*, 377 F.3d at 1345 (internal quotation omitted)).  Trueblood presented this claim in state court based solely on state statutes and rules of procedure—a claim not cognizable on federal habeas review.  The fact that Trueblood refers to a "due process" violation in regard to failure to follow state provisions does not change the conclusion that his state law claim is not cognizable in federal habeas review.  *See Branan v. Booth*, 861 F.2d

1507, 1508 (11th Cir. 1988) (federal habeas review's limitation concerning state law questions "is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.' ") (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976)).   Further, the claim concerning denial of a second competency evaluation was not decided on the merits in the state postconviction court or in the First DCA.

On January 15, 2020, Trueblood filed a petition for writ of habeas corpus in the Florida Supreme Court alleging manifest injustice and denial of due process in the trial court's denial of a second competency evaluation (ECF No. 13-25 at 14–18).   As noted *supra*, the Florida Supreme Court treated the petition as having been filed under Florida Rule of Criminal Procedure 3.850 and transferred it to the state circuit court to be treated as if it had originally been filed in the circuit court on January 15, 2020 (ECF No. 13-26 at 2).   The postconviction court denied the motion as untimely under Florida Rule of Criminal Procedure 3.850(b) (ECF No. 13-25 at 91).   The court also concluded that, even if not untimely, the claim was meritless and should be summarily denied because the competency issue was previously raised and addressed on remand from the First DCA.   Trueblood appealed and the First DCA affirmed per curiam on October 15, 2020 (ECF No. 13-29 at 3).   *See Trueblood v. State*, 304 So. 3d 292 (Fla. 1st DCA 2020) (Table).   Although the

petition cited a federal due process claim, the claim was found untimely under Florida law and rules of procedure.

A claim is procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See Coleman v. Thompson*, 501 U.S. 722, 735 & n.1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").  The federal court "lacks jurisdiction to entertain a federal claim on review of a state court judgment, if that judgment rests on a state law ground that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Foster v. Chatman*, 136 S. Ct. 1737, 1745 (2016) (internal quotation marks and citation omitted).

The state court found Trueblood's claim procedurally barred under Rule 3.850 for not having been raised timely.  This rule is firmly established and regularly followed.  *See* Fla. R. Crim. P. 3.850(b); *Delancy v. Tucker*, 88 So. 3d 1036, 1037 (Fla. 1st DCA 2012) ("Appellant missed the two-year filing deadline in rule 3.850(b), which is a bar that generally cannot be waived."); *see also Jamison v. State,* 73 So. 3d 317, 318 (Fla. 1st DCA 2011); *Knowles v. State*, 41 So. 3d 332, 333 (Fla. 1st DCA 2010); *Lawson v. State*, 35 So. 3d 112, 112 (Fla. 2d DCA 2010); *Meyer v.*

*State,* 570 So. 2d 1001, 1003 (Fla. 2d DCA 1990); *Mullins v. State*, 974 So. 2d 1135, 1137 (Fla. 3d DCA 2008); *Ghent v. State*, 27 So. 3d 121, 123 (Fla. 4th DCA 2010).

Even where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994) (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989)).   For all these reasons, Trueblood's claim that the state court constitutionally erred by denying a second competency evaluation is procedurally defaulted in this court.  He cannot now return to state court to obtain a ruling on his procedural due process claim.

Trueblood has not shown cause for the default and prejudice resulting therefrom, or that the federal court's failure to reach the merits of the claim would result in a fundamental miscarriage of justice.  *See Tower*, 7 F.3d at 210.  He has not identified any "governmental interference or the reasonable unavailability of the factual basis for the claim" that prevented him from exhausting the federal claim. *See McCleskey*, 499 U.S. at 497.  Trueblood also has not satisfied the miscarriage of justice exception by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *See Schlup*, 513 U.S. at 327. For these reasons, this aspect of Ground One is barred from federal review.

### b.  Retrospective Competency Determination and Substantive Incompetency

As noted *supra*, in the second part of Ground One, Trueblood challenges the nunc pro tunc competency determination after trial.  The State responds that the federal nature of this claim was not fairly presented in his appeal from the nunc pro tunc hearing and order (ECF No. 13 at 16).  However, Trueblood's claim that the retrospective determination of competency was not based on competent, substantial evidence suggests that he was tried and convicted while incompetent in violation of the United States Constitution (*see* ECF No. 1 at 93).  A substantive claim of incompetency generally cannot be defaulted.  *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 481 (11th Cir. 2012).

### 2.  Clearly Established Federal Law

Competence to proceed to trial requires the defendant to have the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense . . . ."  *Drope v. Missouri*, 420 U.S. 162, 171 (1975).  A defendant is incompetent if he lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362 U.S. 402, 402 (1960).  Each defendant has a substantive

fundamental right under the Due Process Clause not to be tried or convicted while incompetent.  *See Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996).  To receive a competency hearing on a claim of actual incompetency, a defendant must present clear and convincing evidence raising a real, substantial and legitimate doubt as to his competency.  *Fallada v. Dugger*, 819 F.2d 1564, 1568 (11th Cir. 1987).

A defendant also has a procedural right under the Due Process Clause to adequate procedures to protect his right not to be tried or convicted while incompetent.  *Pate v. Robinson*, 383 U.S. 375, 378 (1966).  "If the trial court ignores a bona fide doubt as to the defendant's competency, *Pate* requires a *nunc pro tunc* competency hearing as long as a meaningful inquiry into the defendant's competency can still be made."  *Fallada*, 819 F.2d at 1568.  The Eleventh Circuit has held that "[i]f the trial court fails to order a competency hearing at trial when one is warranted, the state may still attempt to prove that the defendant was in fact competent at the time of trial at a *nunc pro tunc* competency hearing, so long as a reliable inquiry into the defendant's competency can still be made; the burden is on the state."  *Watts v. Singletary*, 87 F.3d 1282, 1287 (11th Cir. 1996) (citing *James v. Singletary*, 957 F.2d 1562, 1570–71 & n.11 (11th Cir. 1992); *Fallada*, 819 F.2d at 1568; *Zapata v. Estelle*, 588 F.2d 1017, 1020 (1979)).

To prove a substantive claim that the defendant was tried while incompetent, the prisoner must present clear and convincing evidence as to his incompetence. *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995).  "In bringing a substantive incompetency claim in a § 2254 petition, the petitioner 'is entitled to no presumption of incompetency and must demonstrate his . . . incompetency by a preponderance of the evidence.' "  *Lawrence*, 700 F.3d at 481 (quoting *James*, 957 F.2d at 1571).

### 3.    Federal Review of State Court Decision

After the First DCA reversed in part and remanded for a nunc pro tunc competency hearing, the State circuit court proceeded to hold a competency hearing on March 7, 2017 (ECF No. 13-13 at 122).  Dr. Michael D'Errico, an independent forensic psychologist consultant for the State, testified that he evaluated Trueblood for competency on April 23, 2013, approximately one year before his trials in the instant cases (*id.* at 129).  The evaluation was ordered on April 12, 2013, to determine Trueblood's competency to proceed to trial in these cases (ECF No. 13-1 at 24).  Dr. D'Errico testified that he concluded that Trueblood was competent to proceed (ECF No. 13-13 at 129).  Dr. D'Errico explained that during his evaluation, Trueblood answered questions designed to assess his understanding of his current

legal predicament, his charges, and the range and nature of penalty possibilities (*id.*

at 131).  Dr. D'Errico testified:

> He understood the adversarial nature of the legal process.  He
> was able to accurately describe the roles and functions of various
> important officers of the court.  He was also aware of his various plea
> options, including the concept of plea bargaining.  And demonstrated a
> fairly good understanding of the behaviors he would have to display in
> court, performing the role of defendant.
>
> And he was able to give me a general report about the details
> associated with the offenses such that I thought that he would have an
> acceptable ability to communicate this information to his defense
> attorney.

(ECF No. 13-13 at 131).  Dr. D'Errico testified that it would not change his opinion

regarding Trueblood's competency to learn that he refused to accept a 35-year prison

term in the face of multiple life sentences (*id.* at 132).

The State offered four exhibits, which were admitted into evidence (ECF No.

13-13 at 130–33).  Dr. D'Errico's written report (ECF No. 13-14 at 216) was

admitted as State's Ex. 1.  A motion for a second competency evaluation (ECF No.

13-13 at 49–53) was admitted as State's Ex. 2.  A  hearing transcript pertaining to

that motion (ECF No. 13-13 at 54–85) was admitted as State's Ex. 3.  A renewed

motion for a second evaluation and order denying the motion (ECF No. 13-13 at 86–

89) were admitted as State's Ex. 4.  Counsel for the State noted that the exhibits

show that the motion for a second competency evaluation was based in part on

defense counsel's concern that Trueblood rejected a plea offer contrary to the advice she gave him (ECF No. 13-13 at 132).   At the conclusion of the nunc pro tunc hearing, the judge—who was not the original judge in the case—expressed some concerns in performing a retrospective competency determination (*id.* at 139–41).

Despite of these expressed concerns, the circuit court ultimately issued an order finding as follows:

> Under ordinary circumstances, a competency hearing would have been held soon after the report by Dr. D'Errico.   At that time, Defendant would have had the right to request another evaluation to confirm or contest the report tendered by Dr. D'Errico.   Here, it appears there was only a disagreement with that report once Defendant decided not to accept a tendered plea offer.   That decision was reviewed by the trial judge, and after a conversation with the Defendant, the Court determined there was no basis for an additional competency evaluation. That decision by the Trial Court—denying the request for an additional competency evaluation—was not the basis for the Appellate Court's reversal in this case.   Instead, the Appellate Court questions the Trial Court's failure to hold a competency hearing with respect to the first evaluation which was completed as a result of the first request.

> Dr. D'Errico testified before the Court on March 7, 2017.   His testimony is accepted as credible, and his opinion of Defendant's competency at the time he was evaluated is confirmed.   The Court finds that Defendant was competent as of April 23, 2013.

> Accepting that the Trial Court properly reviewed and rejected Defendant's counsel's motion for a second evaluation as being unnecessary, Defendant continued to be competent through the time of trial.   No other issues were raised with respect to his competency other than his counsel's rejected assertion that he must be incompetent because he would not accept a favorable plea agreement.

> Having conducted a nunc pro tunc competency hearing, and having determined that Defendant was indeed competent to proceed as of the date of Dr. D'Errico's report and at every time after that report up until the time of his trial, this Court's work is done.  There is no basis for overturning his conviction in these cases, at least not for any reason relating to Defendant's competency.

(ECF No. 13-13 at 97–98).  Trueblood appealed and the First DCA affirmed without discussion.  *See Trueblood v. State*, 273 So. 3d 949 (Fla. 1st DCA 2019) (Table).

No Supreme Court case has held nunc pro tunc competency determinations are per se violations of the Fourteenth Amendment, although the Court has recognized difficulties inherent in making such determinations.  *See Pate v. Robinson*, 383 U.S. 375, 387 (1966); *Dusky v. United States*, 362 U.S. 402, 403 (1964).  Since *Drope*, the Eleventh Circuit has held that "[i]f the trial court fails to order a competency hearing at trial when one is warranted, the state may still attempt to prove that the defendant was in fact competent at the time of trial at a nunc pro tunc competency hearing, so long as a reliable inquiry into the defendant's competency can still be made; the burden is on the state." *Watts v. Singletary*, 87 F.3d 1282, 1286 n.6 (11th Cir. 1996) (citing *James*, 957 F.2d at 1570–71 & n.11); *Fallada*, 819 F.2d at 1568); *Zapata v. Estelle*, 588 F.2d 1017, 1020 (1979)).  "When the trial court does ignore a bona fide doubt as to the defendant's competence to

stand trial, *Pate* dictates a nunc pro tunc competency hearing if a meaningful inquiry into the defendant's competence can still be had." *Zapata*, 588 F.2d at 1020.

The state circuit court made a meaningful inquiry into Trueblood's competence based on the evidence presented at the nunc pro tunc hearing. Thus, the First DCA had a reasonable basis for concluding that the circuit court's retrospective determination of Trueblood's competency did not violate the Fourteenth Amendment's Due Process guarantee.

Dr. D'Errico's written report, State's Ex. 1, documented that Trueblood was able to give a detailed family and personal social history (ECF No. 13-14 at 216–17). The report finds that Trueblood was cooperative and oriented in all major spheres, with intact remote and recent memory (*id.* at 218). His speech was coherent and goal directed and his thought structure was normal and ideas were meaningfully associated. Trueblood could fully state the pending charges and understood the roles of the trial participants. Dr. D'Errico reported that Trueblood had an adequate memory of the times in question and could relate details of the charged offenses, would have an acceptable capacity to relate the information to his attorney, and understood the process of plea bargaining (*id.* at 218, 219). Trueblood was able to state the behavior expected of him at trial—to be quiet, listen, and direct any inquiries to his attorney (*id.* at 218). Dr. D'Errico's report noted that Trueblood was

described as a non-problematic inmate by jail staff, further indicating his ability to display appropriate courtroom behavior (*id.* at 219).  The report concluded that Trueblood is a man of average intelligence who is free of symptoms of severe mental illness.  Trueblood appeared mildly depressed in the interview based mostly on the circumstances of his current incarceration.  He displayed a full understanding of his legal predicament and the adversarial nature of the legal process and various plea options.  In sum, Dr. D'Errico concluded that Trueblood was competent to proceed to trial (*id.*).

In addition to Dr. D'Errico's report, the judge reviewed State's Ex. 3, a hearing transcript pertaining to counsel's motion for a second competency evaluation (ECF No. 13-13 at 54–69).  At that hearing, Trueblood's counsel informed the trial judge that she had reviewed Dr. D'Errico's report that found Trueblood competent, but filed the motion for a second evaluation because of the nature of the case.  She also cited the rejected plea offer that would resolve the pending multiple violations of probation as well as the instant criminal charges with a term of years less that the minimum guidelines sentence (*id.* at 57–58).  Counsel further explained her reasons for seeking a second competency evaluation:

> I just wanted to be candid with the Court that I did get a copy from Dr. D'Errico.  **But what I wanted was really a mitigation specialist**, but the Court ruled on that last time and said I needed to get

approval from JAC, and JAC said they don't - - they don't object, they don't approve.  They basically filed the response that they filed and they are not going to give us anything else.

So, it was last week I was working 12, 15 hours a day, you know, had to hire somebody just to help me with Trueblood and I just felt like I really didn't have a choice but to do it, Your Honor.

(ECF No. 13-13 at 58–59) (emphasis added).

The court then elicited the terms of the plea offer and engaged Trueblood in a colloquy in which Trueblood responded that he understood he was scheduled for the violation of probation hearing the following Monday and that it would be a bench trial with evidence of 59 new law violations forming the basis of the VOP charges (*id.* at 61–62).   Trueblood responded that he understood the sentence he could receive if found to have violated his probation and understood that the plea offer resolved the pending VOP charges and new criminal cases (*id.* at 63–64).   He understood he had a right to proceed to a VOP hearing and to trial on the new charges and that he could call witnesses and testify if he so chose (*id.* at 65).   When asked what he did not understand about the current status of his cases, Trueblood stated that he understood "everything," but just never got the scoresheet in the first case (*id.* at 67).   At the conclusion of the hearing, Trueblood responded that he had no questions for the court and confirmed that he still wanted to reject the plea offer (*id.* at 69).   The court denied the motion for a second evaluation (*id.*).

At the nunc pro tunc competency hearing, no evidence of Trueblood's incompetence at his trials was submitted. The court found Dr. D'Errico's testimony credible and found no basis to conclude a second competency evaluation should have been made (ECF No. 13-13 at 98). The conclusion that Trueblood was competent when tried was reasonable in light of trial counsel's statement at the hearing that she filed the motion for a second competency evaluation primarily because she wanted a mitigation specialist to assist her, and because she suggested no basis to conclude that Trueblood was incompetent to proceed.

The trial transcripts for the instant criminal cases also disclose no evidence casting doubt on the reliability of the retrospective order of competency. At the beginning of trial of the first case—case number 2013CF915—held on March 11, 2014, the judge engaged Trueblood in a colloquy concerning court procedure to be followed, which Trueblood confirmed he understood (ECF No. 13-5 at 83–84). Trueblood confirmed his understanding that if he wanted to communicate with his attorney, he would write a note (*id.*). He also confirmed that he understood he had a right to choose not to testify and would need to give his decision on that later in the case (*id.* at 84–85). Continuing, Trueblood confirmed that he understood his lawyer was trained in the law and would make trial strategy decisions after consultation with him (*id.* at 85). And he confirmed he understood that if he were

to testify, he would be subject to cross-examination as any other witness (*id.* at 86).

At the conclusion of the State's case, Trueblood was given time to talk to his counsel

about the decision to testify.  The following colloquy then took place:

> THE COURT: Okay.  Mr. Trueblood, have you had an opportunity to discuss this issue with your lawyer?
>
> THE DEFENDANT:  Yes, ma'am.
>
> THE COURT:  Has he been able to answer all the questions that you have?
>
> THE DEFENDANT:  Yes, ma'am.
>
> THE COURT:  Do you have any questions you'd like to ask me?
>
> THE DEFENDANT:  No, ma'am.
>
> THE COURT:  You fully understand that you have the right not to testify or you have the right to testify.  That's completely up to you?
>
> THE DEFENDANT:  Yes, ma'am.
>
> THE COURT:  All right.  And what have you decided to do?
>
> THE DEFENDANT:  I wish not to testify.
>
> THE COURT:  . . . . So are you sure?
>
> THE DEFENDANT:  Yes, ma'am.

(ECF No. 13-5 at 222–23).  At the conclusion of the trial, the court held another

colloquy with Trueblood about whether he had any issues with his counsel, noting,

"You wanted to try 916 before 915" to which Trueblood responded, "No.  I just had a question about . . . why did we start with 915 rather than that.  That's all"  (ECF No. 13-5 at 261).  When asked again if there were any issues with his lawyer, Trueblood answered, "No, ma'am" (*id.* at 262).

In his trial of case number 2013CF916 held May 12, 2014, the judge engaged Trueblood in a similar colloquy concerning his ultimate decision whether to testify, to which Trueblood was responsive (ECF No. 13-6 at 59–60).  Trueblood again confirmed that he understood he would be treated as any other witness and indicated he had no questions for the court (*id.* at 60–61).  He confirmed he had a pencil and paper to make notes (*id.* at 61).  Trueblood later confirmed he had discussed whether to testify with his counsel and decided not to testify (*id.* at 203).  Trueblood was asked by the court whether he was in agreement with his counsel's questioning of one of the witnesses, to which he responded, "Yes, ma'am" (*id.* at 209–10) .

In neither trial did Trueblood engage in any outbursts or bizarre or disruptive behavior.  He never expressed any confusion concerning procedure or his role, or his counsel's role, in the trial.  He answered the court's inquiries responsively and respectfully, giving no indication that he lacked "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or "a

rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402.

Although Dr. D'Errico's evaluation was done approximately one year before the trials at issue here, nothing has been shown or identified in the record to suggest that Trueblood's competency was lost in that year prior to trial. Trueblood has not identified any United States Supreme Court decision requiring that more than one competency expert be appointed. In fact, the Supreme Court in *Drope* held a statute requiring only one expert evaluation was sufficient to protect a defendant's right not to be tried while incompetent. 420 U.S. at 173. Under Florida law, two experts are not required. *See Tita v. State*, 42 So. 3d 838, 840 (Fla. 4th DCA 2010) ("[N]othing in the statutes or rules requires a court to appoint a specific number of experts to evaluate a defendant's mental competency."); *Charles v. State*, 223 So. 3d 318, 330 (Fla. 4th DCA 2017) (same). And, failure to provide a second competency expert under Florida law has been found not to be fundamental error or go to the foundation of the case. *D'Oleo-Valdez v. State*, 531 So. 2d 1347, 1348 (Fla. 1988). The state court's retrospective finding of competency has not been shown to be based on irrelevant or insufficient evidence, such that a Due Process violation has been shown. Trueblood is not entitled to relief on his claim that his retrospective determination of competency deprived him of Due Process or that the decision of the state court

was unreasonable.  Nor has Trueblood demonstrated violation of his substantive right not to be tried and convicted while incompetent.

As Trueblood's conduct at his trials shows, he participated appropriately in his defense and, in his colloquies with the court, appeared to understand the various aspects of the proceedings.  The fact that he insisted on what might be considered an unwise strategy in rejecting a plea offer is not evidence that he was incompetent and unable to rationally and factually understand the proceedings and assist counsel.  *See, e.g.*, *United States v. Hines*, 694 F.3d 112, 122 (D.C. Cir. 2012) ("Even if ill-advised, [the defendant's] proposed defense strategies did not create reasonable cause to believe him incompetent to stand trial."); *United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008) (same); *Rios v. Jones*, No. 3:15cv576-LAC/CAS, 2017 WL 4212331, at *8 (N.D. Fla. Aug. 17, 2017), *report and recommendation adopted*, No. 3:15cv576-LAC/CAS, 2017 WL 4181351 (N.D. Fla. Sept. 21, 2017) ("The fact that a defendant, who has not otherwise indicated any basis to find incompetency, insists on following an unwise defense strategy is not evidence that the defendant is incompetent and unable to rationally and factually understand the proceedings and assist counsel.").

Trueblood has not demonstrated that the retrospective determination of competency was unreliable or that he was tried and convicted while incompetent. Trueblood is not entitled to habeas relief on this claim.

**B.    Ground Two: The trial judge was not impartial as evidenced by her subsequent removal from office for violation of the Canons of Judicial Conduct**

Trueblood contends that he did not receive a fair trial because his trial judge was subsequently charged with violating the Canons of Judicial Conduct and involuntarily retired from the bench based on conduct unrelated to his cases (ECF No. 2 at 104).  He contends these circumstances indicate that while she presided over his cases, she lacked independence and impartiality (*id.*).  The State responds that the claim is procedurally defaulted on adequate and independent state grounds (ECF No. 13 at 32).

Trueblood raised this claim as "Point One" in a petition for writ of habeas corpus filed in the Florida Supreme Court on January 15, 2020 (by the mailbox rule), more than five years after his trials (ECF No. 13-25 at 4).  In the petition, he alleged manifest injustice and violation of his federal Due Process right because his trial judge was subsequently investigated and charged with several violations of the Code of Judicial Conduct for conduct occurring in 2012 and 2013 (ECF No. 13-25 at 61–65).  The alleged violations pertained to the judge's close friendship with and

apparent support of the Sheriff of Wakulla County; conduct in an unrelated criminal case involving a favor asked of one of the attorneys while a ruling in the case was pending; and improper intervention in a criminal case involving the son of a close friend (*id.*). In 2015, pursuant to stipulation, the circuit judge was involuntarily retired from judicial service "due to a permanent disability that seriously interferes with the performance of her judicial duties." *See In re Fulford*, 177 So. 3d 1267 (Fla. 2015) (Table).

Trueblood's petition was transferred to the Circuit Court and treated as a motion for postconviction relief under Rule 3.850 (ECF No. 13-26 at 2). The circuit court denied the motion, finding that because Trueblood's convictions and sentences were final in 2016, the motion filed in 2020 for postconviction relief was untimely under Rule 3.850 (ECF No. 13-25 at 91). The court also found that, even if the motion had been timely, relief could not be granted because the "claim about the impropriety of the trial judge are based entirely on speculation and so cannot serve as the basis for a postconviction motion" (*id.*). Trueblood appealed and the First DCA affirmed per curiam on October 15, 2020 (ECF No. 13-29 at 3). *See Trueblood v. State*, 304 So. 3d 292 (Fla. 1st DCA 2020) (Table).

A claim is procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See*

*Coleman*, 501 U.S. at 734–35 & n.1; *Caniff*, 269 F.3d at 1247 ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). As discussed *supra* in Ground One, pertaining to this same order finding the transferred petition untimely as a Rule 3.850 motion, this rule is firmly established and regularly followed. *See, e.g.,* Fla. R. Crim. P. 3.850(b); *Delancy*, 88 So. 3d at 1037; *Knowles*, 41 So. 3d at 333 ; *Lawson*, 35 So. 3d at 112; *Ghent*, 27 So. 2d at 123; *Mullins*, 974 So. 2d at 1137.

Because this claim concerning the trial judge was found procedurally defaulted on independent and adequate state grounds, and Trueblood has not demonstrated any basis on which to excuse the procedural default, the claim should be denied.

**C.    Ground Three: The trial court committed fundamental error resulting in manifest injustice and deprivation of Due Process when it denied Trueblood a second competency evaluation as required by Florida law.**

Trueblood argues that he was denied Due Process when he was not provided a second expert evaluation for competency. He contends a Florida statute required a second expert be appointed. This claim is the same claim that was presented as part of Ground One and found to be procedurally defaulted. Further, as noted *supra*,

regardless of allegations of denial of due process, state law claims are not cognizable in federal habeas review.  Accordingly, Ground Three should be denied.

## V.    CONCLUSION

Trueblood has not satisfied the requirements of § 2254(d) with respect to any claim.  Therefore, the § 2254 petition (ECF No. 1) should be denied.

## VI.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.' " *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to

proceed further.' " *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 327).  Trueblood cannot make that showing with respect to any of his claims. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

3.      That the clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida, this 30ᵗʰ day of  September 2021.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**